IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:26-CR-163 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| AMANDA JOY OPOKU-BOACHIE, | ) | UNITED STATES' DETENTION |
| aka AMANDA JOY GLUM, | ) | MEMORANDUM |
| aka AMANDA JOY KESSEI BIERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through counsel, David M. Toepfer, United States

Attorney, and Brian M. McDonough, Assistant United States Attorney, respectfully submits this

Detention Memorandum to aid the Court in considering the necessity of detaining the Defendant,

Amanda Joy Opoku-Boachie, aka Amanda Joy Glum, aka Amanda Joy Kessei Bierman

("Opoku-Boachie")

## I.     BACKGROUND

Defendant Opoku-Boachie, 53, a U.S. Citizen who has resided in Ghana for the last 10+

years, and separately charged defendants Jamal Abubbakari 22, of Accra, Ghana; and Kamal

Abubakari, 22, of Accra, Ghana, and in related cases; Frederick Kumi, aka Emmanuel Kojo

Baah Obeng, aka Abu Trica ("Abu Trica"), 31, of Swedru, Ghana; and Daniel Yussif, aka

Denteni, aka Slab ("Slab"), 31, of Accra, Ghana, were charged in three indictments with

Conspiracy to Commit Wire Fraud and Money Laundering Conspiracy in a romance and gold

inheritance scam that defrauded over 100 victims across the United States of over $15 million,

with the Defendant, Jamal, and Kamal, here associated with more than $7.2 million in losses to

victims—figures that are growing as the government continues to investigate.

The Defendant, Jamal, and Kamal, as well as Abu Trica, and Slab have all used their ill-gotten gains to acquire luxury vehicles and other things of value.  Attached as Exhibit A are photographs from social media and law enforcement depicting Opoku-Boachie, Jamal, and Kamal, as well as Abu Trica, and Slab associating with one another, and posing with luxury vehicles, jewelry, watches, and money, as well as images of Abu Trica's mansion.

The Defendant was part of a criminal network that devised romance fraud schemes to obtain money from victims by mostly targeting the elderly in the United States.  Abu Trica and Slab acted as leaders of one faction, using online dating sites and social media to identify and target elderly victims—often widows or divorcees.  They employed advanced techniques including AI-driven video platforms to engage victims under fictitious female personas.  Meanwhile, Jamal and Kamal Abubakari and Opoku-Boachie led another faction, leveraging Ghanaian associates to communicate directly with victims via encrypted apps and by phone, sustaining false identities to facilitate fraud.  Both groups used Ghana-based money mule coordinators and contacts within the U.S. Ghanaian immigrant community to launder millions of dollars through fake businesses and bank accounts.

From about July 2024 to April 2026, the Defendant and her cohorts targeted older Americans on dating websites and social media platforms to engage in romance fraud schemes.  The Defendant conspired with others to use fake personas to establish close and personal relationships with the victims which were often romantic in nature.  After being misled by with false stories or gold or diamond inheritances, the victims sent money via wire transfer to financial accounts controlled by conspiracy members.  Portions of the funds were further provided to co-conspirators in Ghana and elsewhere.  Assets seized by international law enforcement partners included a Lamborghini, Tesla Cybertruck, Mercedes Benz, and BMW, as

2

well as a mansion.  The total value of the seized assets and property was $3 million.

On April 1, 2026, a federal grand jury in the Northern District of Ohio returned a secret Indictment against the Defendant charging her with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  On May 4, 2026, the Defendant was arrested in the Eastern District of Virginia.  The Defendant was appointed counsel in the Northern District of Ohio.[1]

## III.    LAW AND ARGUMENT

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a

(A) a serious risk that such person will flee; or

(B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness.

18 U.S.C. § 3142(e).  In particular, if a court determines that the United States is entitled to a detention hearing under § 3142(f), the Court must conduct a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community under § 3142(e).  If no set of conditions can reasonably assure appearance and safety, the Court must order detention.  18 U.S.C. § 3142(e).  The Court considers the factors under § 3142(g) in making that determination.

Another portion of the same section, § 3142(d), provides a separate lane and analysis for temporary detention of defendants with certain outstanding detainers.  This temporary detention provision is obviously only relevant if a court does not otherwise order pre-trial detention, as

---

[1] The United States does not have access to the Defendant's Financial Affidavit.  The United States understands that the Defendant claimed that she could not afford counsel.

pretrial detention obviates the flight concern and danger requirements contained in § 3142(d)(2). 18 U.S.C. § 3142(d)(2) (noting that "[i]f the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section").  In summary, if this Court were somehow inclined to release Defendant, it could still order temporary detention for ten days to allow ICE to detain the defendant pursuant to § 3142(d).  A defendant's immigration status is, however, a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3).  *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001).

> A.     <u>No Condition or Combination of Conditions will Reasonably Assure the Appearances of Defendant as Required.</u>

The United States maintains that there are no condition or combination of conditions that will reasonably assure Defendant's appearances.

> a.   <u>Every Applicable Factor Cuts Against Defendant's Release.</u>

This Court considers the following factors in determining a defendant's suitability for release:

> 1.     the nature and circumstances of the offense;
>
> 2.     the weight of the evidence against the defendant;
>
> 3.     the history and characteristics of the defendant; and
>
> 4.     the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release (the United States is not asserting personal physical danger at this time, but is asserting economic and societal harm).

18 U.S.C. § 3142(g).  In addition, this Court also rightfully considers "whether the defendant has ties to other countries which would make it possible or likely for him to leave the United States" in determining a risk of nonappearance.  <u>United States v. Hanson</u>, No. 3:22-CR-00076, 2022 WL 1813585, at *4 (N.D. Ohio May 3, 2022), report and recommendation adopted, No.

3:22 CR 76, 2022 WL 1803337 (N.D. Ohio June 2, 2022) (quoting United States v. Cabrera, No. 2:09-CR- 287(2), 2009 WL 5167668, at *4 (S.D. Ohio Dec. 18, 2009)).

i.  Nature and Circumstances of the Offense.

 Defendant is a member of a repulsive conspiracy that seeks to anonymously steal money from elderly United States citizens posing as romantic partners.  The consequences of this conduct are all-encompassing.  Victims report that they are left with absolutely nothing to sustain their lives going forward after a lifetime of work and saving.  In addition, individual victims are ashamed and deprived of the trust they once had in their fellow human beings. From a larger perspective, trust in the law is eroded by these criminals posing as attorneys to commit their inheritance fraud crimes.

Defendant faces stark penalties for her crimes.  If convicted, Defendant faces up to 20 years of imprisonment, fines that begin at up to $250,000 and will end up much greater, up to 3 years of supervised release, and a special assessment of $100, for each count.  Defendant's potential lengthy period of incarceration incentivizes potential flight.  See Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *5, citing United States v. Kiper, No. 3:22-ce-00003, 2022 WL 943958, at *3 (E.D. Ky. Mar. 29, 2022); United States v. Shuklin, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties ... provide a strong incentive to flee").

Overall, Defendant appears to have very little waiting for her in the Northern District of Ohio.  If allowed to travel, the United States may not have the means to stop Defendant from fleeing elsewhere or to Ghana.  She will have every incentive to do so.  This factor cuts in favor of detention.

ii.  Weight of the Evidence Against Defendant.

Defendant has no community or family ties to this judicial district (let alone, this country), "which constitutes a proper basis for finding potential flight risk." Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *5, United States v. Johnson, No. 2:17-CR-20489, 2020 WL 1821099, at *4 (E.D. Mich. Apr. 10, 2020) (stating that because "Johnson has no strong community or family ties in this district, the Court is also concerned that Johnson poses a flight risk"), appeal dismissed, No. 20-1432, 2020 WL 6580176 (6th Cir. May 20, 2020); United States v. Ho, No. 3:16-CR-46, 2016 WL 5875005, at *5 (E.D. Tenn. Oct. 7, 2016) (noting that a lack of ties to the state where charges were brought "is evidence of a risk of flight") (citing cases), aff'd, No. 16-6561, 2016 WL 10077327 (6th Cir. Dec. 9, 2016); United States v. Cashin, 739 F. Supp. 1107, 1111 (E.D. Mich. 1990) (reasoning that defendant's lack of "professional or financial ties to the community other than his illegal activities" was "a very serious obstacle to [his] release pending trial").

Members of the conspiracy used aliases and documents in furtherance of the conspiracy. "Courts have found that use of false names supports a finding of flight risk." Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *5, citing United States v. Isaacs, 469 F. Supp. 3d 801, 804 (S.D. Ohio 2020).  Location monitoring does nothing to ameliorate Defendant's flight concerns. This is not a case where Defendant may go to another city or state, from which they could feasibly be located and brought back.  No, Defendant's incentive is to go to the other side of the world.  This factor cuts against pretrial release.

### iii.   History and Characteristics

Defendant's characteristics are best displayed by her disgusting conduct–that is, playing the role of a romantic partner—stealing money from the elderly, including widows, from romance scams.  Defendant's only recent substantial ties are in Ghana.  Defendant's criminal

history shows a pattern of flight with multiple court cases, warrants, and capiases issued for her failure to appear in court.  Her prior failures  to appear and conduct, which spits in the face of both the law and human dignity, cuts against pre-trial release.

### iv.  Danger to the Community

The "danger to any person or the community" language in § 3142(g)(4) "is not limited to the danger of physical violence." Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *7, citing Isaacs, 469 F. Supp. 3d at 804. The economic and societal harm resulting from economic and exploitive offenses may appropriately be considered under this factor. Ids.

Defendant and her cohorts have caused harm to the community in millions of dollars. This harm has been perpetrated on one of the most vulnerable segments of society: the elderly. There is profound harm associated with releasing a person who came to the United States only to cause this terrible harm. This factor also weighs in favor of pretrial detention.

## IV.     CONCLUSION

Considering all of the § 3142(g) factors and evaluating the evidence as a whole, it is clear that there is no condition or combination of conditions that will reasonably ensure the Defendant will appear as required.  As such, the United States respectfully requests that this Court order the Defendant to be detained pending trial in this case.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Brian M. McDonough
Brian M. McDonough (OH: 0072954)
Assistant United States Attorney
801 W. Superior Ave., Suite 400
Cleveland, OH 44113
(216) 622-3965
Brian.McDonough@usdoj.gov

# Exhibit A



DEFENDANT AND JAMAL AND KAMAL



JAMAL AND KAMAL AND LAMBORGHINI



JAMAL AND KAMAL AND CORVETTES



JAMAL AND KAMAL AND CORVETTES



JAMAL AND KAMAL AND CORVETTES



JAMAL'S JEWELRY AND WATCHES (ARRANGEMENT)

15



KAMAL'S JEWELRY AND WATCHES (LANCASTER)



JAMAL AND KAMAL AS YOUNGER FRAUDSTERS



JAMAL AND KAMAL AND ABU TRICA



ABU TRICA AND SLAB



ABU TRICA AND SLAB



ABU TRICA TESLA CYBERTRUCK



ABU TRICA LAMBORGHINI



ABU TRICA MANSION



ABU TRICA MANSION

24



ABU TRICA AND FRAUD CASH



ABU TRICA VEHICLES



ABU TRICA VEHICLES



ABU TRICA VEHICLES